**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GENERAL PATTERN CO.,
A Minnesota Corporation,

        Plaintiff / Counter-Defendant,        CASE NO. 06-CV-12627

-vs-        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

REIT MANAGEMENT & RESEARCH,
LLC., a Delaware Corporation, and
HRP NOM LP, Delaware Partnership,

        Defendants / Counter-Plaintiffs.

_____/

**OPINION AND ORDER
(1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment. Defendants / Counter-Plaintiffs filed their Motion for Summary Judgment on June 28, 2006. (Docket No. 6). Plaintiff / Counter-Defendant filed its Motion for Summary Judgment on October 17, 2006. (Docket No. 39). The Court held a motion hearing on January 25, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

This case arises out of a commercial lease dispute between Plaintiff / Counter-Defendant General Pattern Co. ("General Pattern") and Defendants / Counter-Plaintiffs Reit Management & Research L.L.C. and HRP NOM, L.P. (collectively "HRP"). The parties dispute whether Rider 1

1

of the Lease Agreement, providing an early termination option, applied to subsequent renewals of the lease.

General Pattern argues that the lease agreement is not ambiguous and that each renewal of the lease incorporated Rider 1.

HRP contends that Rider 1 only applied to the first lease term.

In addition, HRP contends that even if the lease agreement did include the early termination provision, General Pattern has breached the lease by continuing to occupy and use the premises after its announced intention of vacating the premises by March 31, 2006.

General Pattern filed a breach of contract action against HRP, alleging the following causes of action: (I) Declaratory Relief, and (II) Breach of Contract. HRP filed a Counter-Complaint against General Pattern asserting Breach of Contract for the early termination of the lease agreement.

General Pattern is incorporated in Minnesota, and its principal place of business is in Blaine, Minnesota. (Compl. ¶ 1). Reit Management is a limited liability company incorporated in Delaware with its principal place of business in Newton, Massachusetts. (Compl. ¶ 2). HRP is an incorporated limited partnership in Delaware with its principal place of business in Baltimore, Maryland. (Compl. ¶ 3).

General Pattern is in the business of designing, prototyping, and manufacturing parts and tooling for commercial entities. (Compl. ¶ 8). General Pattern obtained a contract with Ford Motor Company ("Ford") to prototype and manufacture parts. (Compl. ¶ 11). As a result, General Pattern entered into a lease agreement with Hallwood 95, L.P., HRP's predecessor in interest, to

lease certain space in Dearborn, Michigan ("Original Space") for a period of three (3) years – April 1, 1996 to March 31, 1999. (Compl. ¶¶ 9-10).

From prior dealings with Ford, General Pattern had concerns that Ford would terminate its contract before the expiration of the lease term. (GP Br. 1). Therefore, General Pattern and Hallwood 95 negotiated the following Rider ("Rider 1") to the lease agreement:

> In the event that Tenant's contract with Ford Motor Company is terminated prior to the expiration of the Lease, Tenant shall have two options to terminate the Lease early provided it is not in default of any part of the Lease. The first option may be exercised by the Tenant at the completion of the twelfth (12th) month and the second option at the completion of the twenty-fourth (24th) lease month. The two options are specific to these dates and may not be changed. . . .

(Compl. ¶ 12; Ex. A).

The parties subsequently amended the lease agreement on five (5) separate occasions. (Compl. ¶ 13; Ex. B). Each of the five lease amendments contained the following two terms:

> 1. All terms used in the Lease Amendment No. [] with initial capitalization and defined in the lease shall have the meanings given to such terms in the lease, unless context otherwise requires.
>
> 10. Except as hereby amended, the Lease and all the terms and conditions thereof shall remain in full force and effect and are hereby ratified and confirmed by [the parties].

(Compl. ¶ 14; Ex. B).

The Lease Agreement itself contained the following "integration" clause.

> 29.9 <u>Entire Agreement</u>: This Lease and the Exhibits and Riders, if any, attached hereto and forming part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between Landlord and Tenant other than are set forth in this Lease, the Exhibits and Riders hereto. Except as otherwise provided herein, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by Landlord and Tenant.

Lease Amendment 1, dated October 22, 1998, relocated the leased property to a larger location in Dearborn ("New Space") encompassing 21,600 square feet. (Compl. ¶ 15). The Lease amendment specified that the lease would run for the New Space from November 1, 1998 to March 31, 2004. (Compl. ¶ 16).

Lease Amendment 2, dated August 6, 1999, amended the lease to add 4,800 square feet at another location in Dearborn ("Additional Space"). (Compl. ¶ 17). Lease Amendment 2 provided that the lease term for the Additional Space would run from September 1, 1999 to August 31, 2002. (Compl. ¶ 18).

Lease Amendment 3, dated February 6, 2002, terminated the lease on the Additional Space and reduced the leased property in the New Space back to 21,600 square feet. (Compl. ¶ 19). The amendment also provided that the lease on the Additional Space terminated on April 30, 2002, rather than August 31, 2002. (Compl. ¶ 20).

Lease Amendment 4, dated April 11, 2003, extended the term of the lease for five (5) years on the Original Space – from April 1, 2004 to March 31, 2009. Upon the execution of Lease Amendment 4, General Pattern was only leasing the Original Space. (Compl. ¶¶ 21-23).

Lease Amendment 5, dated December 16, 2003, merely changed the rent installments for the leased property and did not amend the terms of the lease. (Compl. ¶ 24).

In 2005, Ford terminated its contract with General Pattern. (Compl. ¶ 28). On October 14, 2005, General Pattern notified HRP of its intention to exercise the second option contained in Rider 1 to terminate the lease upon the twenty-fourth (24th) lease month – March 31, 2006, or twenty-four (24) months from the commencement of the extended lease term under Lease Amendment 4. (Compl. ¶ 29; Ex. C). HRP responded that it believed that the two options set forth

in Rider 1 of the lease only applied to the first lease term that ran from April 1, 1996 to March 31, 1999. (Compl. ¶ 30; Ex. D). Under HRP's interpretation of the applicability of Rider 1, General Pattern could have only terminated the lease on March 31, 1997 (twelfth month) or on March 31, 1998 (twenty-fourth month). HRP continues to refuse to accept General Pattern's notice of termination. (Compl. ¶ 31).

General Pattern asserts that Rider 1, providing the two termination options, continued to be part of the lease agreement throughout the subsequent renewals and amendments. (Comp. ¶ 32). General Pattern requests that the Court provide declaratory relief on the interpretation of the lease agreement and damages arising from HRP's breach of contract.

HRP filed its Counter-Complaint for Breach of Contract against General Pattern, contending that the Rider 1 termination options contained in the lease agreement only applied to the original lease term. (HRP Compl. ¶ 7).

## II.  ANALYSIS

### A.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of*

6

*Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.     The Lease Agreement and Applicability of Rider 1

#### 1.     The Parties' Arguments

HRP makes the following arguments for the purposes of summary judgment: (1) the lease language is unambiguous and Rider 1 plainly was not included in subsequent lease renewals; (2) in the alternative, extrinsic evidence demonstrates that the parties did not intend Rider 1 to apply to the renewals; (3) General Pattern's representative admitted that Rider 1 did not apply; and (4) General Pattern continues to occupy the premises in question, despite its notice of early termination.

HRP first argues that the language of the lease agreement is unambiguous and that General Pattern is attempting to create ambiguity where one does not exist in the lease language. Rider 1 of the lease agreement states in relevant portion:

> In the event that Tenant's contract with Ford Motor Company is terminated prior to the expiration of the Lease, Tenant shall have two options to terminate the Lease early provided it is not in default of any part of the Lease. The first option may be exercised by the Tenant at the completion of the twelfth (12th) month and the second option at the completion of the twenty-fourth (24th) lease month. The two options are specific to these dates and may not be changed. . . .

HRP contends that since no Amendments existed at the time of Rider 1's contemplation, it can only be construed to "mean what it plainly says." (HRP Br. 5). HRP further points out that there was only one "twelfth" month and only one "twenty-forth" month in reference to the original lease term. Per HRP, the purpose of Rider 1 was for the landlord to be able to recoup its build-out / improvement costs. Additionally, the language "these two options are specific to these dates only and may not be changed" supports the contention that the termination clause would only

apply to twelve (12) and twenty-four (24) months from the beginning of the lease on April 1, 1996. (*Id*.).

In the alternative, HRP contends that if the lease is ambiguous, extrinsic evidence demonstrates that the parties intended that the early termination provision only applied to the first term of the lease. HRP introduces the affidavit of Doug Van Noord, its negotiator of the original lease agreement and subsequent amendments at issue. (HRP Resp. Ex. J, Van Noord Aff.). Van Noord states that when General Pattern was awarded the contract by Ford, it was concerned initially about the longevity of the contractual relationship. As a result, the two options for termination were written to apply to the original term only. According to the written agreement, if General Pattern had terminated the least after the twelfth (12th) month, it would have been obligated to pay the Landlord $34,272.00. If after the twenty-fourth (24th) month, General Pattern would have paid $17,136.00. (*Id*. ¶ 9). Van Noord also declares that these costs were intended to allow the Landlord to recoup its unamortized tenant improvement costs associated with the build out for the space for General Pattern as a tenant and for a lease commission. (*Id*. ¶ 10). HRP maintains that Van Noord was the only company representative present at all subsequent negotiations to the original lease, and at no time was the early termination option discussed or addressed. (*Id*. ¶¶ 11-12).

HRP attaches, as evidence in support of its contention that Rider 1 did not apply to any lease extension beyond the original lease term, a June 2004 letter to James Firnstahl, General Pattern's Chief Financial Officer. According to HRP, these letters were sent by Hallwood 95, L.P., during the midst of a merger with HRP, to Hallwood's current tenants to ask for confirmation of significant terms of their lease agreements. (Van Noord Aff. ¶¶ 10-12).

The June 4, 2004 letter, drafted by Hallwood 95 and addressed to Hallwood's agent "Richard D. Stolivich," was signed and dated by Firnstahl on June 30, 2004. Paragraph 3 of the letter states:

> 3. The expiration date of the current term of the lease is **03/31/09**, subject to Tenant's right to exercise zero option(s) to renew the term of the Lease for **zero** period(s) of **zero** year(s) each. The Lease does not contain any option or other right that would permit Tenant to terminate the current term of the Lease prior to the expiration date, except as follows: **None**.

(HRP Resp. Ex. A, Letter to Richard D. Stolivich) (emphases in original).

HRP maintains that General Pattern should be bound by this response / admission through the doctrines of agency, equitable estoppel, and judicial estoppel. (HRP Resp. 11-15). HRP first argues that Firnstahl's apparent authority bound General Pattern to the position, reflected in the June 4, 2004 letter / response, that it did not have a terminable lease option. Second, HRP states that Firnstahl's statements should equitably estop General Pattern from arguing the validity of Rider 1. Finally, HRP contends that judicial estoppel applies to several statements from General Pattern's previous counsel stating that the Lease agreement was "ambiguous."

General Pattern argues (1) that the language of the lease agreement is clear and unambiguous that Rider 1 continued to be a part of the lease; and (2) if the lease is found to be ambiguous, that the parties intended Rider 1 to be part of the agreement throughout the lease renewals.

In support, General Pattern points out that the following paragraph that was included in every single lease amendment:

> Except as hereby amended, the Lease and all the terms and conditions thereof shall remain in full force and effect and are hereby ratified and confirmed by Landlord and Tenant.

9

(GP Br. 6). Moreover, General Pattern states that none of the subsequent lease amendments expressly modified or amended Rider 1 to the lease.

Alternatively, if the Court found the lease to be ambiguous, General Pattern offers an affidavit from Dennis Reiland, the president of General Pattern, who states that he sought the inclusion of the early termination clause to protect the company from any ongoing adversities with Ford. (GP Br. Ex. E, Reiland Aff. ¶¶ 7-8). Reiland further notes that it was his understanding the Rider 1 provision was to remain in force during the subsequent amendments to the lease. (*Id*. ¶ 10). He declares that no representative or agent from HRP or any of its affiliates represented to him that in ratifying the lease amendments, the terms of Rider 1 would cease to apply. (*Id*. ¶ 12).

General Pattern argues that if the Court finds that the lease agreement is unambiguous, then that finding would preempt HRP's agency and equitable estoppel arguments based upon Firnstahl's statements. General Pattern also contends that HRP cannot provide any evidence that it relied upon the information in the June 2004 letter. Finally, General Patten contends that judicial estoppel does not apply to statements made by its attorneys to HRP's counsel during the course of settlement negotiations.

    2.  Discussion

The "cardinal" rule in interpreting contracts is to ascertain the intention of the parties. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992). If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity. *City of Grosse Pointe Park v. Michigan Mun. Liability & Prop. Pool*, 473 Mich. 188, 198 (2005) (internal quotations and citation omitted). A court cannot create ambiguity where the terms of the contract are clear. *Id*. In

order to admit extrinsic evidence on the interpretation of a contract, there must be a finding of either patent or latent ambiguity. *Id*. A patent ambiguity "appears on the face of the document, arising from the language itself." *Id*. (citation omitted). A latent ambiguity exists "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *McCarty v. Mercury Metal Craft Co.*, 372 Mich. 567, 575 (1964). "[T]he allegation of a latent ambiguity gives a court cause to consider extrinsic evidence at least once: The court must consider the extrinsic evidence to determine if there exists an ambiguity and then, if the ambiguity does exist, the court must consider extrinsic evidence to resolve that ambiguity." *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, No. 05-2146/2603, – F.3d – , slip op. 6 (6th Cir. Jan. 30, 2007).

Even if a court does not find a patent or latent ambiguity in a contract between the parties, parol evidence can still be introduced to show (1) that the agreement was not "integrated" or (2) that the contract was invalid as a whole. *Hamade v. Sunoco, Inc. (R & M)*, 271 Mich. App. 145, 167-68 (2006).

Under Michigan law, "an integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement, and the parol evidence rule bars the use of extrinsic evidence to contradict the terms of a written contract intended to be the final and complete expression of the contracting parties' agreement." *APJ Assocs., Inc. v. North American Philips Corp.*, 317 F.3d 610, 614 (6th Cir. 2003) (citation and internal quotations omitted) (applying Michigan law). However, the parole evidence rule does not bar the introduction of evidence of subsequent agreements that may operate as a

11

modification or waiver of the original signed agreement. *Rasch v. Nat'l Steel Corp.*, 22 Mich. App. 257, 261 (1970).

      The Michigan Court of Appeals decision in *City of Detroit v. Detroit Commerce Assocs.*, No. 188056, 1996 WL 33347519 (Mich. Ct. App. Dec. 30, 1996) (unpublished), is instructive. In that case, the parties entered into a five-year commercial property lease that included an early termination clause. *Id.* at *1. The parties then executed three (3) lease amendments. The first amendment extended the five (5) year lease term to January 31, 1994. The second amendment provided that the tenant could terminate the lease upon twelve (12) months notice at any time after a certain date. The third amendment extended the term of the lease and contained a provision that the "Lease, as herein amended, is hereby ratified and confirmed by the parties and shall remain in full force and effect." *Id.* The final amendment was silent as to the early termination provision. *Id.*

      The plaintiff then filed a complaint for declaratory judgment that it could exercise the early termination option contained in the second amendment. *Id.* The defendant's representative argued that since the plaintiff agreed to a five-year renewal and did extensive tenant improvement, the representative believed that the plaintiff had agreed to forgo the early termination option. *Id.* However, the plaintiff's representative stated that she never indicated this to any of the defendant's representatives. *Id.* Furthermore, the defendant's representative who drafted the third amendment admitted the he "inadvertently neglected" to delete the early termination provision. *Id.* The defendants argued that the circumstances surrounding the third amendment created an ambiguity as to whether it retained the early termination option. *Id.*

The court held that the terms of the lease were clear and unambiguous and that the lease termination provision was part of subsequent lease revisions. *Id*. at *2. Further, the court found significant that the plain language of the third amendment, explicitly ratified the previous terms of the lease. *Id*. Additionally, since the lease was unambiguous, the court found that defendant failed to introduce evidence to indicate (1) that there was a mutual mistake or scrivener error or (2) that the plaintiff knew that defendant mistakenly retained the provision and concealed this knowledge from the defendant. *Id*.

In the instant case, the Court holds that the lease agreement is clear and unambiguous on its face. The Court does not find a patent or a latent ambiguity in the lease agreement language.

However, even if the contract language is unambiguous, a party can introduce parol evidence to show that the agreement was not fully integrated or was the result of fraud, illegality, or mistake. *Hamade,* 271 Mich. App. at 167-68. HRP does not argue that the June 2004 letter demonstrates that the lease agreement was not fully integrated or that the lease agreement was a result of fraud, illegality, or mistake. Therefore, the Court holds that the June 2004 letter is inadmissible parol evidence.

Furthermore, there is no indication that the June 2004 letter from Hallwood 95 to Firnstahl acted as any type of modification or waiver of the written lease agreement terms. The original lease agreement contained an "integration clause" in paragraph 29.9. General Pattern argues that the June 2004 letter is inadmissible parol evidence to the extent that it attempts to vary or change the contract terms. The June 2004 letter explicitly recognized in paragraph 2 that "[t]he Lease has not been modified except for the following: Amended **10/22/98**, **4/11/03** & **12/16/03**. The Lease, as so modified, constitutes the entire understanding between Landlord and Tenant with respect to

13

the Premises." (HRP Resp. Ex. A ¶ 2) (emphases in original). Hence, the Court notes that the June 2004 letter does not evince an intent by the parties to modify or waive the terms of the lease agreement.

For similar reasons, HRP's estoppel arguments do not have merit. Equitable estoppel arises when "(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Cook v. Grand River Hydroelectric Power Co., Inc,* 131 Mich. App. 821, 828 (1984). Generally, a party must establish that there has been a false representation or concealment of a material fact. *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, 270 (1997). The Court observes that HRP could not have justifiably relied upon the June 2004 letter given the fact that the Lease Agreement and the letter reiterated that the Lease Agreement itself was the "entire understanding" between the parties. General Pattern also points out that HRP has not produced any evidence that HRP, or its agents, relied upon the June 2004 letter. Finally, there is no indication that General Pattern made a false representation or concealed a material fact. Thus, the Court holds that HRP cannot make an equitable estoppel claim arising from the June 2004 letter.

Nor can HRP make a cognizable judicial estoppel claim based upon the June 2004 letter. The Michigan Supreme Court has adopted the following formulation of the judicial estoppel doctrine:

> Under [the judicial estoppel] doctrine, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.
>
> Under the "prior success" model, the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the

> earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent.

*Paschke v. Retool Indus.*, 445 Mich. 502, 509-10 (1994) (internal citations omitted). The communications of General Pattern's former counsel about the merits of the case during settlement negotiations do not amount to a "successful and unequivocal" assertion of a position, nor has this Court accepted General Pattern's previous counsel's statements as true. Therefore, HRP cannot assert judicial estoppel in this instance.

For the foregoing reasons, the Court holds that Rider 1 applied throughout the lease renewals and that General Pattern did not breach its contract with HRP by exercising its early termination option for March 31, 2006.

**B.     Breach of Contract**

Even if General Pattern had a right to terminate early the lease, HRP still contends that General Pattern continues to occupy the premises, in violation of the lease. HRP asserts evidence that despite General Pattern's attempted early termination, it has remained in the leased space and continues to use the premises to conduct business. HRP offers the September 19, 2006 Affidavit of Mike Cook, a maintenance engineer for HRP. (Pl. Resp. Ex. G, Cook Aff.). Cook states that although General Pattern moved some of its property and equipment out of the building in April 2006, it still locates inventory and equipment there, such as drill presses, ovens, and paint booths. (*Id*. ¶ 5). Cook also notes that he observed Terry Uhlrik, an alleged agent of General Pattern, continuing to use the building several times a week to assemble prototype tail lights and dashboard assemblies. (*Id*.). Cook also observed General Pattern take deliveries of equipment to the premises on three separate occasions, in April, June, and July 2006. (*Id*. ¶ 6). Cook also states

that the executives of General Pattern store two of their boats on the premises. (*Id.* ¶ 7). In addition, according to Cook, General Pattern has continued to pay the utility bills. (*Id.* ¶ 8).

General Pattern's only response to these allegations is to deny that Uhlrik is its agent or employee. (GP Resp. Escrow Motion 5 n. 1). As a result, per General Pattern, Uhlrik's statements to Cook constitute inadmissible hearsay. (*Id.*).

From this evidence, the Court holds that there is a genuine issue of material fact to whether General Pattern breached its contract with HRP through its continued occupation of the leased premises after General Pattern's announcement to exercise its early termination option for March 31, 2006.

### III.    CONCLUSION

For the foregoing reasons, the Court:

(1)    **GRANTS IN PART** and **DENIES IN PART** General Pattern's Motion for Summary Judgment; and

(2)    **DENIES** HRP's Motion for Summary Judgment.

**SO ORDERED.**


                                    s/Paul D. Borman
                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

Dated:  February 1, 2007


### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 1, 2007.

        s/Denise Goodine
        Case Manager